## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN L. WIESSMANN, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | Case No. 2:16-cv-06261 |
| vs. | : | |
| | : | |
| NORTHWESTERN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| *Defendant.* | : | |

## <u>O R D E R</u>

In consideration of Defendant's Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff's response thereto, **IT IS HEREBY ORDERED THAT:**  Defendant's Motion is **DENIED**.


BY THE COURT:


_____
Goldberg, J.

HAINES & ASSOCIATES
By:     Clifford E. Haines, Esquire
          Danielle W. Weiss, Esquire
The Widener Bldg. – 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
chaines@haines-law.com
dweiss@haines-law.com
Attorney I.D. Nos.: 09882, 201067
Phone:  215-246-2200
Fax:  215-246-2211

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBIN L. WIESSMANN, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | Case No. 2:16-cv-06261 |
| | : | |
| NORTHWESTERN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| *Defendant.* | : | |

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

Plaintiff Robin L. Wiessmann, by her undersigned attorneys, Haines & Associates, hereby submits this memorandum of law in opposition to the motion to dismiss (Doc. 6) filed by Northwestern Mutual Life Insurance Company ("Defendant," or "Northwestern").

**I.      BACKGROUND**

Plaintiff Robin L. Wiessmann ("Ms. Wiessmann," or "Plaintiff") filed a Complaint (Doc. 1) in this action on December 1, 2016.  Discovery is not yet open.

Ms. Wiessmann purchased a disability insurance policy, Policy No. D725680 (the "Disability Policy"), from Northwestern on December 23, 1989. (Compl. (Doc. 1), Intro.

Background. & Facts, ¶¶ 1-2; Compl. Ex. A [Disability Policy]).  The Disability Policy has remained in force and affect since then, up to the present.  (Compl. (Doc. 1), Backgr., Facts ¶¶ 1-2).  The Policy provides for the payment of benefits for total and/or partial disability in the event the insured, Ms. Wiessmann, is unable to perform one or more of the principal duties of the her occupation.  (Compl. (Doc. 1), Facts,  ¶ 3; Compl. Ex. A [Disability Policy] at 5).

Ms. Wiessmann's profession is that of an investment banker/financial professional.  At the time she purchased the policy, in 1989, she was employed at Goldman, Sachs and specified her primary occupation as "Investment Banker." (Compl. (Doc. 1), Ex. A [1989 Policy Applic. Annexed to Disability Policy]). The following year, Ms. Wiessmann completed a supplemental application, again listing her "occupation" as "Investment Banker," and her employer as Artemis Capital Group, Inc.  (*Id*. [1990 Policy Applic. Annexed to Disability Policy]).  In May, 2008, while working as the State Treasurer of the Commonwealth of Pennsylvania, (Compl.(Doc. 1), Ex. B [Req. for Disability Benefits Form]) Ms. Wiessman came under the care of healthcare professionals for two medical conditions, which caused pain, distraction, fatigue and depression and interfered with her ability to perform the duties of her occupation. (Compl. (Doc. 1), Facts, ¶¶ 4, 7). At that time, Ms. Wiessmann also identified her occupation as "Finance Professional, Banking."  (Compl. (Doc. 1), Ex. B [Req. for Disability Benefits Form] at 5/13).  The two medical conditions included diverticulitis (a disease that occurs in the digestive system and involves pouches known as diverticula that wreak havoc on the colon) and lumbar disc disease (which results from degeneration of spinal discs and intrusion on spinal nerves causing exquisite pain in the lower back, into the buttocks and down the legs). (Compl.(Doc. 1), Facts, ¶¶ 5-6).  By July 2008, Ms. Wiessmann was so disabled by these illnesses that she began delegating her work to other staff members at the State Department of the Treasury, which she continued to do

through the end of her position in January 2009. (*See* Compl. (Doc. 1), Ex. D [June 30, 2015 Northwestern Letter] at 2).  As the end of the Treasury position drew near, as a result of her medical conditions and their interference with her ability to perform the duties of her occupation, Ms. Wiessmann was unable to look for, or even consider taking, a full-time position in her occupation of Investment Banking. (*See* Compl. (Doc. 1), Ex. B [Request for Disablity Benefits Form] at 5/13, 10/13; Ex. D [June 30, 2015 Northwestern Letter] at 2).  From January 1, 2010 to January 15, 2015, in light of the fact that her disability precluded full-time employment in her occupation, Ms. Wiessmann began working only in a limited, part-time capacity, outside her profession, by serving on the board of directors of various entities. (*See* Compl. (Doc.1), Ex. D [June 30, 2015 letter] at 2-3). These board activities brought in some funds, but required only that she attend quarterly meetings and, in some cases, spend a minimal amount of time on telephone calls, preparing for meetings or developing business strategies.  (*Id.*). From January 2010 forward, these board memberships constituted Ms. Wiessmann's only work until January 2015.  (*Id.* at 2).

In or about June 2014, Ms. Wiessmann submitted a claim and proof of disability to Northwestern. (Compl.(Doc. 1), Facts ¶ 8; Compl., Ex. B [Claim & Proof of Disability]). She sought benefits for two periods of time during which she was partially disabled, May 15, 2008 to January 2009 and January 1, 2010 to January 20, 2015, and the one period of time during which she was totally disabled, January 2009 to January 2010.  (Compl. (Doc.1), Facts, ¶ 8;  *see* Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter] at 1).

On or about June 30, 2015, Northwestern notified Ms. Wiessmann that her claim for partial and/or total disability was denied.  (Compl. (Doc. 1), Facts, ¶ 19 &  Ex. D [Letter of June 30, 2015]).  Northwestern continued to deny Ms. Wiessmann's disability claims through two

appeals, up to and including a further denial on November 24, 2015, without conducting further inquiry or review. (Compl.(Doc. 1), Facts, ¶ 21).

Ms. Wiessmann has alleged that Northwestern breached the Policy and acted in bad faith in the investigation, handling and denial of her claims, on several bases.  For example, contrary to Pennsylvania law, Northwestern imposed requirements, positions and interpretations of vague and imprecise language, that were not contained within, and/or were contrary to the Disability Policy. (Compl. (Doc. 1), Facts, ¶¶ 12-16, 18 & 22).[1]  Ms. Wiessmann satisfied the conditions for "proof of disability" stated in the Disability Policy.  (Compl. (Doc.1), Facts, ¶¶ 12, 13, and 16).  Therefore, Northwestern's failure to pay her benefits was a breach of contract. In addition, Northwestern's investigation was both insufficient and conducted in bad faith.  Northwestern, among other things, failed to speak to any doctor or medical provider caring for Ms. Wiessmann, or any employer, family member or other person familiar with her condition to discuss or verify her inability to perform the  duties of her profession.  Further, Northwestern failed to ever request that Ms. Wiessmann undergo an examination by a qualified medical specialist to confirm her condition. (Compl. (Doc. 1), Facts ¶ 20(d) & (e); *see* Compl., Ex. C [Dec. 19, 2014 Northwestern Letter] & Ex. D [June 30, 2015 Northwestern Letter]; Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter], all failing to mention any scheduling or performing of medical tests or examinations by Northwestern's medical professionals).

As a result of Northwestern's breach of contract and its bad faith conduct, Ms. Wiessmann suffered financial harm in the form of lost disability benefits, as well as emotional distress, which has aggravated her medical condition and caused her ongoing losses. (Compl.

---

[1]     Examples of such policy terms are discussed later in this memorandum. Since Northwestern may be charged with knowledge of the terms of its Disability Policy and the requirements of Pennsylvania law, this conduct is at least a plausible basis for bad faith liability.

(Doc. 1), Facts, ¶ 23). In addition, she has and will incur the costs and attorney fees involved in bringing this action. (*See* Compl. (Doc. 1), *ad damnum* clauses, Counts I and II).

## II.     LEGAL ARGUMENT

### A.     The Standards for Motions to Dismiss Filed Pursuant to Rule 12(b)(6)

Defendant's motion is filed under Federal Rule of Civil Procedure 12(b)(6), which permits a defendant to assert the defense that one or more of the plaintiff's claims "fail[s] to state a claim upon which relief can be granted." The Third Circuit has spoken on the standard for such motions since the United States Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), and *Ascroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), changed the law.

As the Third Circuit has emphasized, in some respects, the standard for a motion to dismiss is unchanged. The notice pleading requirement in federal court, which requires that a plaintiff provide only "a short and plain statement of the claim showing the pleader is entitled to relief," Fed. R. Civ. P. 8(a), remains intact. *Phillips v. County of Allegheny*, 515 F.3d 224, 232, 233 (3d Cir. 2008) (quoting, in part, *Twombly,* 127 S.Ct. at 1964); *see also Robinson v. Corizon Health, Inc*. Civ. A. No. 12-1271, 2016 U.S. Dist. LEXIS 171889 at * 13 (E.D. Pa. Dec. 13, 2016) (citing *Phillips*, 515 F.3d at 233). This requirement is intended to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,' and  . . . does not require 'detailed factual allegations.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 127 S.Ct. at 1964).

In addition, it remains true that, in resolving a motion to dismiss, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and then determine whether a reasonable inference may be drawn that the defendant is liable for

the alleged misconduct." *Argueta v. United States Immigration & Customs Enforcement*, 643 F.3d 60, 74 (3d Cir. 2011); *see also Phillips*, 515 F.3d at 233.

However, after *Twombly* (and *Iqbal*), "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed conduct].'" *Phillips*, 515 F.3d at 233 (brackets in original).  As the Third Circuit has noted,

> "a claim requires a complaint with enough factual matter (taken as true) to suggest the required element[s]" . . . . This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element[s].

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965) (bracketed material added).  The factual allegations must be enough to state a claim for relief that is plausible on its face and rises above the level of speculation.  *Phillips*, 515 F.3d at 234.  At the same time, the complaint may not be dismissed "simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'"  *Id.* (quoting *Twombly*, 127 S.Ct. at 1965).

In resolving a 12(b)(6) motion to dismiss, after *Twombly* and *Iqbal*, a district court should take the following steps:

> First the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010) (bracket in original, citations omitted).

In resolving a Rule 12(b)(6) motion to dismiss, courts may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In*

*re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*. 998 F.2d 1192, 1196 (3d Cir. 1993)). A document is regarded as forming the basis of a claim "if the document is 'integral to or explicitly relied upon in the complaint.'" *Id.* (quoting *Burlington Coat Factory*, 114 F.3d at 1426).

**B.      Defendant's Motion to Dismiss Count I Should Be Denied.**

**1.      The Complaint and Accompanying Exhibits Sufficiently Allege That Ms. Wiessmann Was Unable to Perform One Or More of the Principal Duties of Her Occupation and/or Had At Least a 20% Loss of Time Spent At Her Occupation.**

In addressing a 12(b)(6) motion, the Court should ascertain the elements of the claim to determine whether the plaintiff has set forth sufficient factual allegations with respect to those elements to make such a claim plausible. As Northwestern recognizes, there are three elements for a breach of contract claim: (i) the existence of a contract; (ii) a breach of duty imposed by the contract, and (iii) damages to the plaintiff resulting from the breach. (*See* Def.'s Mot. to Dismiss Br. at 8) (citing *Perry v. Potter*, 2008 WL 200272 (E.D. Pa. Jan. 23, 2008)).

Northwestern does not dispute that Ms. Wiessmann has alleged both the existence of a contract and harm resulting from Northwestern's alleged breach of that contract. Instead, Northwestern claims that the Complaint is devoid of necessary allegations related to Northwestern's breach of the Disability Policy. More specifically, Northwestern argues that Ms. Wiessmann has not pleaded that she was unable to perform one or more principal duties of her occupation, or has at least a 20% loss of time spent at her occupation.[2]

---

[2]      While Northwestern asserts, "[T]he Complaint is devoid of any allegation that Ms. Wiessmann was unable to perform one or more principal duties for at least 20% of the time spent at her occupation," (Def.'s Mot. to Dismiss Br. at 9), this characterization is incomplete. Under the language of the Disability Policy, an insured's loss of at least 20% of time spent at his or her occupation is alone sufficient for Partial Disability: "The Insured is partially disabled when: he is unable to perform one or more principal duties which accounted for at least 20% of the time he

Northwestern mischaracterizes the Complaint, as follows. In the Complaint, Ms. Wiessmann alleges that "Both [diverticulitis and lumbar disease] . . . caused pain, distraction, fatigue, and depression which interfered with Wiessmann's ability to perform the duties of her occupation." (Compl. (Doc. 1), Facts, ¶ 7). Moreover, the Complaint recognizes that the Disability Policy provides benefits "in the event the insured is unable to perform one or more of the principal duties of the insured's occupation, (Compl. (Doc. 1), Facts, ¶ 3), and having recognized that fact, proceeds to allege that Ms. Wiessmann submitted a claim and proof of disability. (Compl. (Doc. 1), Facts, ¶ 8). These three paragraphs of the Complaint are sufficient to set forth a plausible claim and give notice to Northwestern of Ms. Wiessmann's position that she was unable to perform one or more of her principal duties.

This is especially true when one considers that, in its investigation and handling of Ms. Wiessmann's claim, Northwestern defined and/or applied the policy term "occupation" in a sense contrary to the only 'definition' in the Disability Policy, which is unquestionably ambiguous. (*See* Compl. (Doc. 1), Facts, ¶¶ 20(a), 22). Of the term "occupation," the Disability Policy states, "The words "his occupation" mean the occupation of the insured at the time he becomes disabled." (Compl. (Doc. 1), Ex. A [Disability Policy] at 5). By using the very same word to define the policy term "occupation," Northwestern did not produce a true definition and introduced vagueness and ambiguity into the Disability Policy.

Policy terms are "ambiguous" if they are "reasonably susceptible to more than one interpretation," *Scottsdale Indem. Co. v. Hartford Cas. Ins. Co.*, Civ. A. No. 06-5339, 2008 U.S. Dist. LEXIS 2454 at *13 (E.D. Pa. Jan. 14, 2008) (quoting *Medical Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999)),which is the case here, where "occupation" may be understood

_____

spent at his occupation before the disability started; **or** he has at least a 20% loss of time spent at his occupation." (Compl. (Doc. 1), Ex. A [Disability Policy] at p. 5) (emphasis added).

to mean "profession" or, alternatively, to mean "current job," the meaning apparently applied by Northwestern, when it regarded being a board member as Ms. Wiessmann's "occupation," and stated it had found no limitations that could be supported for that part-time work activity.  (*See, e.g.,* Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter] at 2).   However, under Pennsylvania law, when policy terms are ambiguous, they are interpreted in favor of coverage and against the insurer; "any reasonable interpretation offered by the insured, therefore, must control."  *Scottsdale,* 2008 U.S. Dist. LEXIS 2454 at *14 (quoting *McMillan v. State Mut. Life Assur. Co*., 922 F.2d 1073, 1075 (3d Cir. 1990)).

Here, Ms. Wiessmann reasonably interpreted the term "occupation" to mean "profession," which definition would control here. Ms. Wiessmann's declared profession or "occupation" from the time of the onset of the Disability Policy, including during all periods of disability, was and is "Investment Banker/ Finance."  (*See, e.g*., Compl., Ex. A [1989 and 1990 Policy Applications Annexed to Disability Policy]; Compl., Ex. B [Req. for Disability Benefits] at 5/13; Compl. Ex. D [June 30, 2015 Northwestern Letter] at 2). "Investment Banker/Finance" was her "occupation" at the time she was not able to be employed, as well as the time when she was minimally employed as a board member for various entities.[3]

 From January 2009 to January 2010, Ms. Wiessmann was unable to seek or accept any full-time employment in her occupation due to her medical conditions, and, in light of that fact, she was therefore then unable to carry out 100 % of her duties.  From January 2010 thereafter to January 2015, Ms. Wiessmann was also unable to seek or accept full-time employment in her

---

[3]      In a clarification sent to Northwestern, which was dated 10/30/15 and overlooked in the drafting of her Complaint, Ms. Wiessmann told Northwestern "It is important for you to note, as I told you on the phone, that the Board work I undertook was always ancillary to my career and was not my profession." Admittedly, this clarification was not filed as part of the Complaint but could be included should the Court require any Amendment.

occupation due to her medical conditions. Accordingly, she accepted very limited, part-time employment outside her occupation, in the form of board of director positions. (*See, e.g.*, Compl. (Doc. 1), Ex. D [June 30, 2015 Northwestern Letter] at 2). Since she was forced to work outside her occupation in the only jobs available to her with minimal requirements, she again may be regarded as unable to carry out 100% of the duties of her profession at that time. To the extent that those board member positions could somehow be characterized as part of Ms. Wiessmann's "Investment Banking-Financial" profession or occupation (which is doubtful), because they largely required only attendance at quarterly meetings and some minimal amount of time on the phone or computer, (*id.* at 2), Ms. Wiessmann likewise would have had "at least a 20% loss of time spent at [her] occupation." (Compl. (Doc. 1), Ex. A [Disability Policy] at 5).

The foregoing demonstrates that Ms. Wiessmann has alleged facts that plausibly indicate that she was unable to perform all of the principal duties of her occupation and/or had a loss of 20% or more of time spent at her occupation. Nothing more is required. Northwestern's motion to dismiss must be denied.

> **2.      Whether Northwestern Was Prejudiced, Pursuant to *Brakeman*, Such That It Was Entitled to Deny Coverage on the Basis of Late Notice, Is Not an Appropriate Issue to Be Raised In a 12(b)(6) Motion at the Outset of the Case; It is an Issue Upon Which Northwestern, Not Ms. Wiessmann, Has the Burden of Proof and One Which Necessitates Discovery.**

As Northwestern readily admits, it has the burden of proving that any breach of its notice provision resulted in prejudice to its position, pursuant to the *Brakeman* case. *See Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 77, 271 A.2d 193, 198 (Pa. 1977). In this regard, Northwestern cites to the Court several cases in which the insurer argued persuasively that its insured's late notice prevented it from performing medical testing or obtaining an independent medical examination of the insured. In this case, however, Northwestern's argument is not persuasive for

the simple reason that the claims of Ms. Wiessmann involved not only disability in 2008 and 2009, but also disability in 2010, 2011, 2012, 2013, and 2014.  Even for disability claims that were for a period closer or, indeed, very close in time to the point at which notice was given by Ms. Wiessmann in June 2014, Northwestern did not conduct any medical testing or obtain any medical examinations of her. (*See* Compl. (Doc. 1), Ex. C [Dec. 19, 2014 Northwestern Letter], Compl., Ex. D [6/30/2015 Northwestern Letter] & Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter], none of which note the conduct of any such testing or examination by Northwestern).  In light of that fact, any argument that Northwestern would have performed testing or examinations for disability occurring earlier, had it received earlier notice, is wholly unconvincing. Nor is there any indication that the passage of time affected the availability of medical records or opportunity to speak to Ms. Wiessmann's treating doctors or medical providers. (*See* Compl. (Doc. 1), Facts, ¶ 20(d) & (e) [Northwestern never sought to speak with any of Ms. Wiessmann's doctors or medical providers]; Compl., Ex. C [Dec. 19, 2014 Northwestern Letter], Compl., Ex. D [6/30/2015 Northwestern Letter] & Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter], all referring generally or specifically to various medical and pharmaceutical records, but not referencing missing records).

Northwestern's argument based on notice and the *Brakeman* decision is a fact-laden issue that is more appropriately raised in summary judgment, should Northwestern gain evidence, during discovery, to support it (a doubtful proposition). Regardless, the argument is sorely inappropriate here and should be rejected. Northwestern's motion to dismiss based on the *Brakeman/*notice issue must be denied.

### C.     Defendant's Motion As to Count II Should Be Denied.

Under Pennsylvania law, the two elements which need to be proved to make out a bad faith claim are: "(1) that the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim." *Kohn v. UnumProvident Corp.*, Civ. A. No. 2:04-cv-4949, 2008 U.S. Dist. LEXIS 101658 at *15 (E.D. Pa. Oct. 31, 2008) (quoting *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005)); *see also Mineo v. GEICO*, Civ. A. No. 12-1547, 2014 U.S. Dist. LEXIS 95686 at *14 (W.D. Pa. July 15, 2014) (quoting *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d. Cir. 2004)).  However, the availability of a remedy under 42 Pa. C.S. § 8731 "'is not restricted to an insurer's bad faith in denying a claim,' but 'may also extend to the insurer's investigative practices.'" *Mineo*, 2014 U.S. Dist. LEXIS 95686 at * 14 (quoting *Northwestern Mut. Life Ins. Co. v. Stein*, Civ. A. No. 98-4820, 2005 U.S. Dist. LEXIS 590 (E.D. Pa. Jan. 13, 2005)). "Bad faith conduct also includes 'lack of good faith investigation into facts, and failure to communicate with the claimant.'" *Mineo*, 2014 U.S. Dist. LEXIS 95686 at *14 (quoting *Johnson v. Progressive Ins. Co.*, 2009 PA Super 255, 987 A.2d 781, 784 (Pa. Super. 2009)).

Here, Northwestern argues that no bad faith claim is made out by the Complaint.  As Ms. Wiessmann understands it, Northwestern's arguments are the following:

(1)     Ms. Wiessmann's notice to Northwestern of her disability claims was untimely and caused prejudice to Northwestern;

(2)     The Complaint does not identify any Policy provisions or interpretations that were based on terms or condition in the Policy that do not exist or were unreasonable under the circumstances; and

(3)     As a matter of law, Northwestern's investigation is reasonable and the Complaint alleges nothing to the contrary.

As set forth below, those arguments must be rejected.

**1.      Plaintiff Has Already Addressed the Notice Issue and Demonstrated That It Does Not Preclude Liability on the Part of Northwestern.**

Ms. Wiessmann has already addressed the notice issue in a previous section of this memorandum and demonstrated that *Brakeman* and Northwestern's current assertions of prejudice do not preclude liability on the part of Defendant.  She refers the Court to that discussion. (*See* Pl.'s Mem. at Section II.B.II).

**2.      The Complaint (and Exhibits) Identify and Support the Proposition That Northwestern Applied or Interpreted Policy Terms in a Manner Contrary to That Called for Under Pennsylvania Law, and/or Contrary to the Policy.**

Northwestern again mischaracterizes the Complaint in arguing to the contrary. Plaintiff has already identified and discussed one term in the Disability Policy, which was applied and interpreted in a manner contrary to that required by Pennsylvania law: the policy term "occupation." (*See, e.g.*, Compl. (Doc. 1), Facts, ¶ 20(a) & discussion in Pl.'s Mem. at Section II.B.1). As discussed earlier in this memorandum, any definition of "occupation" in the Disability Policy is unquestionably ambiguous, and, as such, the term should have been interpreted in favor of coverage.  Instead, Northwestern applied a definition that was contrary to coverage.

In addition, as also alleged in the Complaint, the term "proof of disability" is neither defined nor explained in the Disability Policy.  (Compl. (Doc. 1), Facts, ¶ 14).  Indeed, as related in the Complaint, there is only a single example provided in the Disability Policy of such "proof:" "a written statement of the nature and extent of the disability." (Compl. (Doc. 1), Facts,

¶ 12).  With respect to submission and proof of a disability claim, the Disability Policy says only

the following:

### 4.1     NOTICE OF CLAIM

Written notice of claim must be given to the Company within 60 days
after the start of any loss covered by this policy.  If the notice cannot be given
within 60 days, it must be given as soon as reasonably possible.  The notice
should:

- Give the insured's name and policy number; and
- Be sent to the Home Office or be given to an authorized agent of the
  Company.  The Home Office is located at:

      720 East Wisconsin Avenue
      Milwaukee, Wisconsin 53202

### 4.2     CLAIM FORMS

The Company will furnish claim forms within 15 days after receiving
notice of claim.  *If claim forms are not furnished within that period, proof of
disability may be made by giving a written statement of the nature and extent of
the disability.*

### 4.3     PROOF of DISABILITY

*Written proof of disability* must be given to the Company within 90 days
after the end of each monthly period to which benefits are claimed.  If the proof is
not given within the 90 days, the claim will not be affected if the proof is given as
soon as reasonably possible.

*      *      *      *

### 4.6     MEDICAL EXAMINATION

The Company, at its own expense, may have the Insured examined as
often as reasonably necessary I connection with a claim.  This will be done by a
physician of the Company's choice.

(Compl. (Doc. 1), Ex. A [Disability Policy] at 8) (italic emphasis added).

If Northwestern wanted submission of any further "proof of disability" than "a written

statement of the nature and extent of the disability," it could have set forth any such requirements

in the Disability Policy.  Having not done that, in light of the lack of any Policy definition of

such "proof of disability," the term is vague and ambiguous and should be construed in favor of coverage, *Scottsdale,* 2008 U.S. Dist. LEXIS 2454 at *14, with any reasonable interpretation offered by the insured controlling on the insurer's investigation. *See id.*

However, the reasonable interpretation offered by Ms. Wiessmann, that "proof of disability" should be limited to the only example contained in the Disability Policy, did not control in Northwestern's investigation, claim handling and decision process. Instead, Northwestern construed "proof of disability" in a broad, yet undefined manner, contrary to the Disability Policy and against Ms. Wiessmann. In spite of the fact that Ms. Wiessmann satisfied the "proof" requirement, as it was expressly set forth in the Disability Policy, (Compl. (Doc. 1), Facts, ¶¶ 13, 16, 29), Northwestern, for example, advised her thereafter that "[s]elf-reporting is not considered proof of disability unless those reports can be independently verified;" mentioned the conduct of a "medical review" (also not defined); and concluded that Ms. Wiessmann's Request for Disability Benefits and submitted statements, as well as certain medical records referenced by Northwestern "[fail] to provide the medical evidence required for *proof of disability*," (Compl. (Doc. 1), Ex. D [June 30, 2015 Northwestern Letter], at 4) (italics added). Again, this decision  to deny coverage was made without ever defining in the Policy what "the medical evidence required for proof of disability" was. (*See* Compl. (Doc. 1), Facts, ¶¶ 14, 15, 20(b) & (c) & 22.  Although, at this pre-discovery stage, Ms. Wiessmann is *not* required to provide "clear and convincing evidence that Northwestern adopted an incorrect and unreasonable interpretation of a provision to deny coverage," (*see* Def.'s Mot. to Dismiss Br. at 17), she has

clearly and plausibly alleged that to be the case.[4]   Accordingly, Northwestern's argument on this issue must be rejected.

### 3.   Plaintiff's Allegations Concerning Northwestern's Investigation Are Sufficient to Raise a Plausible Claim of Bad Faith.

According to Northwestern, its investigation "was a thorough inquiry and analysis providing it with a solid foundation for its actions and constituted a reasonable basis on which to deny the claim for purposes of [Section 8371, the bad faith statute]." (Def.'s Mot. to Dismiss Br. at 17). No discovery has been conducted.  Yet Northwestern essentially asks the Court to accept this assertion as true, which runs afoul of the well-known standard of review on a motion to dismiss.  Northwestern is not entitled to the benefit of the doubt as the moving party.  The sum and substance of any denial of coverage letter submitted by Northwestern should not be considered against the Plaintiff on a motion to dismiss because the statements they contain have not yet been tested in discovery.. *See*, *e.g.*, *Mohney v. American Gen. Life Ins. Co.*, 2015 Pa. Super. LEXIS 250 at ** 25-26, 116 A.3d 1123, 1135-36 (Pa. Super. 2015) (insurer's focus on those parts of the information in its possession that supported denial of the claim, while ignoring those portions that supported a contrary decision, was evidence of bad faith).  Indeed, in light of Northwestern's improper interpretations of policy terms, its alleged investigation can already be regarded as faulty. (*See* Compl. (Doc. 1), Count II, ¶¶ 35, 36).

Regardless, Plaintiff has alleged that Northwestern's alleged investigation was neither reasonable nor adequate, and was carried out in bad faith. (*See*, *e.g.*, Compl. (Doc. 1), Count II ¶¶ 35, 36).  The bases set forth in the Complaint for that allegation include the fact that neither

---

[4]      Since Northwestern is assumed to be aware of both the terms of its Disability Policy and the law of the Commonwealth of Pennsylvania, these allegations of its interpretations of policy terms constitute plausible allegations of Northwestern's bad faith. (*See*, *e.g*, *Kohn,* 2008 U.S. Dist. LEXIS 101658 at *15 [Element of bad faith: "[I]nsurer knew of or recklessly disregarded its lack of a reasonable basis in denying the claim."]).

Northwestern nor any of its medical representatives ever spoke to Ms. Wiessmann's treating physicians or any other medical provider providing care for her, (Compl. (Doc. 1), Facts, ¶ 20(d)), and the fact that Northwestern never spoke to Ms. Wiessmann's employers, family members or friends to verify either the principal duties of her occupation or her inability to perform those duties. (*See* Compl. (Doc. 1), Facts, ¶ 20(e)). In addition, a review of Northwestern's letters to Ms. Wiessmann reveals not a single reference to the scheduling or performance of any independent medical examinations by Northwestern (because it was never done). (*See* Compl. (Doc. 1), Ex. C [Dec. 19, 2014 Northwestern Letter] & Ex. D [June 30, 2015 Northwestern Letter]; Def.'s Mot. to Dismiss Ex. 1 [Nov. 24, 2015 Northwestern Letter]).  Under Pennsylvania law, such factors can constitute a basis for a finding that an insurer's investigation was carried out in bad faith.  *See Rancosky v. Washington Nat'l Ins. Co.*, 130 A.3d 79, 96-97, 2015 Pa. Super. LEXIS 822 at **40-41 (Pa. Super. 2015), *appeal granted in part,* 144 A.3d 926 (Pa. 2016) (insured was entitled to new trial on its bad faith claim because insurer had simply reviewed the limited and conflicting information in its records and had failed to contact the insured's physicians, employer or others to inquire into the date when the insured because unable to perform her job duties);[5] *Mohney*, 116 A.3d at 1135, 2015 Pa. Super. LEXIS 250 at ** 23-24 (insurer did not conduct a reasonable investigation because it terminated the insured's benefits without performing an independent medical examination and it failed to contact the insured's treating physician to clarify his responses on a questionnaire sent to him by the insurer); *Mineo*, 2014 U.S. Dist. LEXIS 95686 at **19-23   (court held that insurer's failure to conduct independent medical examination of insured justified denial of insurer's motion for summary judgment on insured's bad faith claim) ("[A]t least two Pennsylvania cases have suggested that

---

[5]     This portion of the *Rancosky* case is not on appeal to the Pennsylvania Supreme Court.

the failure to obtain an independent medical examination could be probative towards a showing of bad faith.") (citing *Hollock v. Erie Ins. Exch.,* 54 Pa. D. & C.4th 449, 512 (Pa. Ct. Common Pleas, Luzerne Co. 2002), *aff'd*, 842 A.2d 409 (Pa. Super. 2004); *Bonenberger v. Nationwide Mut. Ins. Co.* 2002 PA Super 14, 791 A.2d 378, 379-80 (Pa. Super. 2002)).

The Complaint sufficiently alleges a plausible claim that Northwestern's investigation was inadequate and performed in bad faith. Accordingly, Northwestern's argument on this point, too, must be rejected and its motion to dismiss must be denied.[6]

---

[6]    Plaintiff notes that, in bad faith cases, where the insurer's state of mind or knowledge, as well as the propriety of its actions, may be at issue, the evidence relevant to the bad faith claims is in the exclusive possession and control of the insurer, in the form of the claims file, the handwritten or computer claim logs kept by adjusters, claims handlers and other claims personnel, and the claims manuals provided to employees. The insured's discovery of such information is a normal part of a bad faith case. As the Eastern District court has noted,

> The claims file is a unique contemporaneously prepared history of the company's handling of the claim; in an action such as this [bad faith] the need for the information in the file is not only substantial but overwhelming. The "substantial equivalent" of this material cannot be obtained through other means of discovery. The claims file "diary" is not only likely to lead to evidence but to be very important evidence on the issue of whether [the insurer] acted reasonably.

*Hartman v. Banks*, 164 F.R.D. 167, 170 (E.D. Pa. 1995) (quoting *Reavis v. Metropolitan Prop. and Liab. Ins. Co.,* 117 F.R.D. 160, 164 (S.D. Cal. 1987)); *see also, e.g., Marshall v. Nationwide Mut. Ins. Co*., Civ. A. No. 93-CV-6998 1994 U.S. Dist. LEXIS 7834 at * 2 (E.D. Pa. June 7, 1994) ("The Court finds ample authority to support a ruling that the claims file or claims log should be disclosed in a bad faith action against the insurance carrier.") (citations omitted). This case being in its early stages, such discovery has not yet occurred.

## III.     CONCLUSION

For all the foregoing reasons, plaintiff Robin L. Wiessmann respectfully requests that the

Court deny the motion of defendant Northwestern Mutual Life Insurance Company to dismiss

the Complaint (Doc. 6).[7]

Respectfully submitted,

**HAINES & ASSOCIATES**

   */s/ Clifford E. Haines*
CLIFFORD E. HAINES (PA 09882)
DANIELLE M. WEISS (PA 201067)
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (T)
(215) 246-2211 (F)

Dated: March 3, 2017                    *Attorneys for Plaintiff, Robin L. Wiessmann*

---

[7]     To the extent that the Court should disagree that Plaintiff's claims have been sufficiently alleged by her Complaint, attached Exhibits and incorporated material, Plaintiff respectfully requests leave to amend her Complaint.

19

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBIN L. WIESSMANN, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| vs. | : | Case No. 2:16-cv-06261 |
| | : | |
| NORTHWESTERN MUTUAL | : | |
| LIFE INSURANCE COMPANY, | : | |
| | : | |
| *Defendant.* | : | |

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, of Haines & Associates, hereby certify that, on or about this third day of March, 2017, I caused the foregoing Memorandum of Plaintiff in Opposition to Defendant's Motion to Dismiss the Complaint, with proposed Order, to be filed and served via the Court's ECF System, email and/or First Class Mail on the following counsel of record:

Kevan F. Hirsch, Esq.
Jessica A. Kubisiak, Esq.
Kaplin Stewart Meloff Reiter & Stein, P.C.
910 Harvest Drive, Suite 200
Blue Bell, PA 19422-0765
khirsch@kaplaw.com
jkubisiak@kaplaw.com

Respectfully submitted,

Date: March 3, 2017         _____/s/ Clifford E. Haines_____
                               CLIFFORD E. HAINES